# Dutton's Estate.

*Ejectment—Conclusiveness of judgment—Equitable title—Equitable owner in possession—Specific performance.*

Where a son holds a complete equitable title to land under a contract with his deceased father, and is in actual possession and occupancy of the land, he must in an action of ejectment brought against him by the devisees of his father, set up his equitable title, and if he fails to do so, he cannot subsequently proceed in the orphans' court against his father's estate for the specific performance of the contract to sell the land.

When the plaintiff in an ejectment, has the legal, and the defendant the equitable, title, a verdict for the plaintiff not only sustains his legal title, but determines the invalidity of the defendant's equitable title. In such a suit the plaintiff seeks to enforce his legal title by means of the common-law action, and the defendant, under our mixed system of jurisprudence, is permitted to enforce his equitable title as a defense through the same action which as to him as the actor is treated as a bill for specific performance. Both titles are necessarily involved in the action and the validity of both is determined by the verdict and judgment.

Argued Feb. 9, 1904. Appeal, No. 259, Jan. T., 1903, by Thomas E. Dutton et al., from decree of O. C. Delaware Co., sustaining exceptions to auditor's reports in estate of Nathan C. Dutton, deceased. Before MITCHELL, C. J., DEAN, FELL, MESTREZAT and THOMPSON, JJ. Reversed.

Petition for specific performance of a contract to sell real estate.

The facts are stated in the opinion of the Supreme Court.

*Errors assigned* were in sustaining exceptions to report of auditor, W. Roger Fronefield, Esq., and decreeing specific performance.

*V. Gilpin Robinson*, for appellants.—The ejectment was conclusive against the petitioner's title: Winpenny v. Winpenny, 92 Pa. 440; Seitzinger v. Ridgway, 9 Watts, 496; Amick v. Oyler, 25 Pa. 506; Budd v. Finley, 151 Pa. 540.

Lewis G. Dutton was bound to set up the paper of September 11, 1888, as a defense or be concluded: Myers v. Black, 17 Pa. 193; Brown v. Bailey, 159 Pa. 121; Bascom v. Cannon, 158 Pa. 225; Sparks v. Walton, 4 Phila. 93.

*Garrett E. Smedley*, for appellee.—No equitable title appeared in the case as a defense or otherwise, and therefore this is not a judgment upon an equitable title.

A party is not concluded by a prior judgment, unless the precise question which he seeks to raise was then necessarily tried and determined: Meyers v. Hill et al., 46 Pa. 9.

OPINION BY MR. JUSTICE MESTREZAT, March 7, 1904:

Nathan C. Dutton died April 20, 1889, testate, seized of certain real estate situated on Paschall avenue, east of 70th street, in the city of Philadelphia. By his will dated April 9, 1889, he devised the residue of all his property, which included the Paschall avenue real estate, to his three children, Thomas E. Dutton, Mary E. Leach and George S. Dutton, in equal shares. Thomas E. Dutton was named as executor and letters testamentary were duly granted to him. On June 4, 1894, Lewis G. Dutton, a son of the testator, presented his petition to the orphans' court of Delaware county, averring, inter alia, that Nathan C. Dutton, his father, had agreed with the petitioner in writing, on September 11, 1888, to deed and convey to him, clear of incumbrances, for the consideration named in the contract, the Paschall avenue property, which agreement was of record in the recorder's office in Philadelphia county; that petitioner had entered into possession of the premises during his father's lifetime and with his consent, and had remained in possession until after his death when he was unjustly dispossessed by the residuary legatees; that the executor refused to convey the premises to him; and that the petitioner had fully complied with all the terms of the agreement to be performed by him, and prayed for a citation on the executor and residuary devisees of the testator commanding them to appear and answer his petition, and if legal cause was not shown to the contrary that the court decree the specific performance of the contract, and that a deed be executed and delivered by the executor conveying to the petitioner in fee simple the premises described in the contract. The agreement referred to in the petition which was signed by Nathan C. Dutton is as follows: "Received Sept. 11th, 1888, of L. G. Dutton fifty dollars in full for all moneys due me and all charges as witness &c., and I hereby agree to deed to him or a person whom he may name

clear of all incumbrances the properties on Paschall avenue east of 70th street, which is now in my name as soon as the Twaddell affair is settled." It is averred in the petition "that your petitioner, on the 15th day of July, 1889, made full settlement with the Twaddells (party) mentioned in the said agreement of the 11th of September, above mentioned, and as required thereby, and duly obtained from them, under seal, a full release of all claims to said premises."

A citation was awarded as prayed for in the petition to which the respondents appeared and filed answers denying, for the reasons therein set forth, the right of the petitioner to have a decree for the specific performance of the contract. One of the reasons set forth in the answers was that in 1891 the residuary legatees had brought an action of ejectment against the petitioner in the court of common pleas No. 4 of Philadelphia county for the Paschall avenue property, and that after trial, a verdict was rendered against him on which judgment was entered and on a habere facias thereon possession of the premises was delivered to them. The petitioner on leave given subsequently amended his petition by adding the following averments: "1. That at the time of the execution of the contract set forth in the said petition of June 4, 1894, the said petitioner, Lewis G. Dutton, was in actual possession of the properties mentioned in said petition and citation, with the knowledge and consent of his father, the said Nathan C. Dutton, as owner (equitable) of the same, and continued in such possession until deprived thereof by the sheriff of Philadelphia county under a writ of hab. fac. poss. issued at the instance of the respondents to the aforesaid citation. 2. That said writ was issued on a judgment in an action of ejectment brought by these respondents in the court of common pleas No. 4 of Philadelphia county, as of December term, 1891, No. 1146, entered after a trial, at which this petitioner was not present, and upon the production of the deed of Nathan C. Dutton and his last will and testament." To the amended petition each of the respondents filed an answer, the second paragraph of which is as follows: "2. I admit that said writ was issued on a judgment in an action of ejectment brought by George S. Dutton, Mary E. Leech, and myself in the court of common pleas No. 4 of Philadelphia county, as of December term, 1891, No. 1146.

The said Lewis G. Dutton was present at said trial, and a verdict was duly obtained against him in said proceeding and judgment entered thereon, from which no appeal has been taken, and I am informed that said verdict and judgment are conclusive of the rights of the said Lewis G. Dutton, and a bar to the present proceedings."

An auditor was appointed by the court to pass on the allegations contained in the petition and answers, who on the pleadings and the evidence submitted to him, recommended that " for the reason that the paper of September 11, 1888, is too indefinite the petition should be dismissed with costs." He found that the consideration named in the contract had been paid in full by the petitioner. On exceptions filed by the petitioner, the court referred the report back to the auditor who was directed to take further testimony and report " his opinion as to whether or not specific performance should be decreed." He again heard the parties and in compliance with the order reported " that from every point of view in the case the petition for specific performance should not be decreed, but that it should be dismissed with costs." The court, however, sustained the petitioner's exceptions to this report and decreed the specific performance of the contract and that the executor should execute and deliver to the petitioner a deed in fee simple for the premises mentioned in the agreement. From this decree, the executor and residuary devisees have appealed.

We have stated the facts so far only as we deem them essential in considering the effect of the judgment against the petitioner in the action of ejectment brought for the same premises by the residuary legatees, the respondents here, in the court of common pleas No. 4 of Philadelphia county. We are of opinion that the trial and judgment in the ejectment suit is conclusive against the right of the petitioner to maintain this proceeding for the specific performance of the alleged contract.

We will assume the validity of the agreement which the petitioner asks the court in this proceeding to enforce against the executor of his father. The petitioner alleged and the auditor found that the consideration named in the agreement had been paid in full. The court held, as averred in the petition, that the " Twaddell affair," referred to in the paper of September 11, 1888, was settled in July, 1889. When, there-

fore, the action of ejectment was brought against the petitioner on January 27, 1891, he had complied with all his covenants in the contract and had a complete equitable title to the premises. He was then in possession and had been occupying the premises as the equitable owner since the execution of the contract on September 11, 1888. The writ in the ejectment suit was served on the petitioner; he appeared by counsel, a trial was had and a verdict was rendered for the plaintiffs. The defendant filed reasons, and obtained a rule for a new trial which was subsequently discharged and judgment was entered on the verdict. So far as appears from the evidence in this proceeding, and we may concede it to be a fact, the petitioner did not set up his equitable title as a defense in the ejectment brought against him. That he might have done so, we think well settled on reason and authority. Having purchased the premises by written agreement, paid the consideration in full and taken possession in pursuance of the contract, he was in a position to hold the property against the vendor or his devisees. As holder of the legal title, they could not dispossess him. Equity would compel his vendor to convey to him the legal title and, in the meantime, would sustain his possession of the premises. If the purchaser were out of possession he would, under the facts as they exist here, be entitled to the specific performance of his contract and, consequently, to the possession of the premises. There is, therefore, no reason why, being in possession, he should be compelled to vacate the premises, prove his contract in the orphans' court, and then enforce his right to possession by ejectment. Neither the law nor equity requires such circuity of procedure. This accords with our decisions on the subject.

Winpenny v. Winpenny, 92 Pa. 440, was an action of ejectment by the plaintiff who claimed under the will of his deceased father, John Winpenny, against the defendant, Joseph Winpenny, who claimed the land by virtue of a parol sale from the father. As a defense to the action, the defendant put in evidence the record of a former action of ejectment brought for the same property, by the same plaintiff against the same defendant, and in which there was a verdict and judgment for the defendant. He then showed that on the former trial he had set up as a defense a parol agreement with his father by

which the latter was to convey to him the land in consideration of certain money which the father owed him, and that in pursuance of the agreement he had entered at once upon the land and had remained in possession ever since, but that his father had never given him a deed. The court directed a verdict for the defendant on the ground that the former judgment, having been rendered upon an equitable title, was conclusive and a bar to a second suit. This court affirmed the judgment entered on the verdict. Mr. Justice GORDON, delivering the opinion, says: "It (Joseph's title) was still but an equitable title, which none but a chancellor could enforce. John Winpenny still continued to hold the legal title, and that legal title could be enforced in an action of ejectment only by the destruction of this outstanding equity. The equitable character of the contract being thus established, it only remains to consider whether a single action of ejectment is conclusive of the rights of the parties. If, however, the establishment of the legal title, and its enforcement by the action of ejectment, must, under our system, be effected by what is equivalent to a decree determining the invalidity of the equity this is not an open question. In such case the only inquiry would be, has Joseph the right to set up his equitable title as a defense? If he has such right, upon that title a court must pass, as would a court of chancery, and its judgment must be equivalent to a decree. We need not add that such a decree of a chancellor would be final and conclusive."

Lewis v. Baker, 151 Pa. 529, was an ejectment in which an equitable defense was set up. The defendants had previously filed a bill in equity against the plaintiff for specific performance which was dismissed on the ground that the parties should be left to their legal remedies. The trial court held that this was an adjudication of the rights of the parties in favor of the plaintiff, and directed a verdict for him. This court in reversing the judgment said: "When the chancellor remitted them to a court of law he meant necessarily that upon the facts disclosed by them they must wait till their possession was attacked, if it ever should be, and then set up all the facts by way of an equitable defense to such action. This they have done. After twenty years of exclusive and peaceable possession, their right, to an equal undivided one half, is at

the last moment challenged by their brother in an action of ejectment. They are now in a court of law where the decree in equity sent them. They have a right to set up any fact that may make it inequitable for their brother to assert his legal title against them."

In Brown v. Bailey, 159 Pa. 121, a parol exchange of lands was made in the lifetime of the plaintiff's testator, which being fully consummated vested in the defendants an equitable title to the premises in dispute, which was set up by defendants in this action of ejectment. In delivering the opinion of this court our Brother THOMPSON says : " As the appellees were defending the right to their possession of the property, their equitable defense was properly within the jurisdiction of the court in which appellants had brought their action. The defense established by the proofs was a complete bar to their right to oust them of possession, and if so was clearly within the jurisdiction of the court. In one breath appellants, by their ejectment, put them upon a defense and deny their right to make it, alleging want of jurisdiction. The jurisdiction of the orphans' court conferred by the act in question, however exclusive it may be for certain purposes, cannot thus be successfully invoked to defeat an equitable defense and oust a possession which equity would protect."

It is clear, therefore, that a defendant in an action of ejectment, holding an equitable title to the land in dispute under a deceased vendor, may set it up as a defense against an owner of the legal title. It is contended, however, by the appellee that while the equitable owner may defend his possession with his title, he is not compelled to do so, and if he is ousted he may regain the possession by proving his contract in the orphans' court, and then bringing an action of ejectment. We do not accede to this proposition. If at the time his title is attacked he is in possession claiming under it, there is no reason why he should not be required to assert it as a defense to an action brought against him to recover the possession of the premises. This is true in all other actions save, formerly, in a common-law ejectment. If a litigant's rights or property are involved in the issue in a suit at law or in equity in which he is brought into a court of competent jurisdiction as a defendant, he must set up every defense, legal or equitable, he may

have, and he will be concluded by the judgment or decree. To permit him to do so at his pleasure would be, in cases like the present, to allow him instead of the law to determine whether one action and judgment on an equitable title shall be conclusive. He is entitled to one opportunity, to " his day in court," to support or defend his title, and reason as well as the rights of those assailing his title require that he should avail himself of it. To hold otherwise would be in conflict with the policy of the law that there should be a speedy end to litigation. It would also contravene the well-settled principle stated by Justice GORDON in Winpenny v. Winpenny, supra, that " a legal title can be enforced in an action of ejectment only by the destruction of an outstanding equity." This is clearly the effect on the title of an equitable owner if a judgment is rendered against him in favor of a holder of the legal title ; and hence, if he would preserve his equitable title, he must successfully defend it when it is attacked in a court having jurisdiction to determine his rights. The owner of the legal title to land may maintain ejectment against every person but the holder of the equitable title : Brolaskey v. McClain, 61 Pa. 146. When, therefore, the plaintiff, in an ejectment, has the legal and the defendant the equitable title, a verdict for the plaintiff not only sustains his legal title, but determines the invalidity of the defendant's equitable title. In such a suit the plaintiff seeks to enforce his legal title by means of the common-law action, and the defendant, under our mixed system of jurisprudence, is permitted to enforce his equitable title as a defense through the same action which, as to him as the actor, is treated as a bill for specific performance. Both titles are necessarily involved in the action, and the validity of both is determined by the verdict and judgment.

We are of opinion that Lewis G. Dutton is concluded by the judgment entered against him in the action of ejectment in favor of the residuary devisees, and that, therefore, he cannot sustain this proceeding.

The decree is reversed, and the petition and proceedings thereon are dismissed at the costs of the appellee.