

2000 Decisions

12-1-2000

# State Auto Ins Co v. Summy

Precedential or Non-Precedential:

Docket 00-1116

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2000

Recommended Citation

"State Auto Ins Co v. Summy" (2000). *2000 Decisions.* Paper 241.
http://digitalcommons.law.villanova.edu/thirdcircuit_2000/241

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2000 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed December 1, 2000

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 00-1116

STATE AUTO INSURANCE COMPANIES,

v.

ERIC SUMMY; JEFFREY ENCK, trading as E & J
RENTALS; BRYANT DIXON, a minor by and through his
parent and natural guardian, SHAWNA DIXON; SHAWNA
DIXON,

Eric Summy; Jeffrey Enck, trading as E & J Rentals,

      Appellants

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA
(D.C. Civ. No. 99-cv-1747)
District Judge: Honorable Eduardo C. Robr eno

Argued October 6, 2000

Before: BARRY, WEIS and ROSENN, Circuit Judges.

(Filed: December 1, 2000)

John R. Trotman, Jr., Esquir e
  (ARGUED)
Peter Russell Kohn, Esquire
Monheit, Monheit, Silverman
 & Fodera, P.C.
Eleven Penn Center, Suite 1101
1835 Market Street
Philadelphia, Pennsylvania 19103

Attorneys for Appellants

Jonathan C. Deisher, Esquire
  (ARGUED)
Post & Schell, P.C.
1245 South Cedar Crest Boulevard
3rd Floor
Allentown, Pennsylvania 18103

Attorneys for Appellee

Laura A. Foggan, Esquire
Daniel E. Troy, Esquire
Erin N. McGonagle, Esquire
Wiley, Rein & Fielding
1776 K Street, N.W.
Washington, D.C. 20006

Attorneys for Amicus Curiae
Insurance Environmental Litigation
Association

OPINION OF THE COURT

WEIS, Circuit Judge.

Despite the pendency of a case in state court on the same issues, the District Court granted a declaratory judgment in favor of an insurance carrier on a coverage case based solely on state law. We conclude that in the circumstances, the District Court should have declined to exercise jurisdiction. Accordingly, we will vacate the judgment and direct that the complaint be dismissed.

Underlying this controversy is a suit for damages brought on behalf of Bryant Dixon, a child who allegedly was

poisoned by lead paint in his home, a structur e owned and leased by E & J Rentals. Dixon's complaint against E & J was filed in the Court of Common Pleas of Lancaster County, Pennsylvania on March 12, 1999. After r eceiving notice of the impending suit, E & J notified State Auto Insurance Co., its liability carrier, of the claim. State Auto advised E & J that the policy's pollution exclusion applied to preclude coverage and, consequently, E & J would have no insurance protection against the Dixon claim.

On March 23, 1999, E & J's attorney sent a letter to State Auto, disagreeing with its denial of coverage and advising that he intended to ask for a declaratory judgment in state court to resolve the matter. State Auto responded by filing the present declaratory judgment action in the District Court for the Eastern District of Pennsylvania on April 7, 1999.

On June 11, 1999, E & J moved to dismiss or stay the federal action, arguing that the court should, in its discretion, decline to exercise jurisdiction over the matter. Three days later, E & J filed its own suit for declaratory judgment in state court. State Auto moved to dismiss the state suit; both parties filed motions for summary judgment in the two courts. After briefing that vigor ously contested jurisdiction, the District Court denied E & J's motion to dismiss or stay on August 25, 1999 without stating its reasons for doing so.

On January 28, 2000, the District Court granted State Auto's motion for summary judgment.1 E & J has appealed, challenging the decision of the District Court to adjudicate the declaratory judgment. E & J also argues the merits of the coverage issue.

Generally speaking, insurance companies include pollution exclusions in their liability policies to shield themselves from claims for injuries caused by exposure to harmful substances, irritants, contaminants, or chemicals as defined more precisely in the policies. The interpretation

_____

1. On February 10, 2000, based on res judicata, the state trial court denied E & J's motion for summary judgment in its declaratory judgment action.

3

of these clauses, particularly in lead poisoning cases similar to Dixon's, has resulted in extensive litigation in state and federal courts throughout the country. No consensus on the interpretation and scope of the exclusionary clauses has emerged among courts nationally, nor in Pennsylvania, whose law applies here.

At the time the District Court denied E & J's motion to dismiss, only two Pennsylvania trial courts had ruled on this issue. See Fayette County Hous. Auth. v. Housing & Redev. Ins. Exch., No. 2440–1997, slip op. (C. P . Fayette Co. (Pa.) Apr. 7, 1999); Lititz Mut. Ins. Co. v. Steely, No. 1044–1997, slip op. (C. P. Lancaster (Pa.) Apr . 17, 1998). Both courts held that pollution exclusion clauses similar to the one at issue here were ambiguous, and ther efore the insurers were required to defend and indemnify the insured property owners.

In the interim between the District Court's denial of E & J's motion to dismiss and the grant of summary judgment for State Auto, the Pennsylvania Superior Court, in a 2–1 decision, reversed the order of the Court of Common Pleas of Lancaster County, and ruled in favor of the insur er. Lititz Mut. Ins. Co. v. Steely, 746 A.2d 607 (Pa. Super . 1999). The policyholders in Lititz have since petitioned the state supreme court for allocatur.

The other Common Pleas case, Fayette County Housing Authority, also came before the Superior Court. Rather than following Lititz, the Superior Court sua sponte ordered rehearing en banc of the decision fr om the Court of Common Pleas of Fayette County. Fayette County Hous. Auth. v. Housing & Redev. Ins. Exch., No. 693–WDA–99, Order (Pa. Super. Ct. March 9, 2000). The case was argued in September 2000.

United States District Courts within this cir cuit also have examined the pollution exclusion's application to lead poisoning cases, with varying results.[2]

_____

2. The following cases held that pollution exclusions applied to preclude coverage: St. Leger v. American Fire and Cas. Co., 870 F. Supp. 641 (E.D. Pa. 1994), aff'd w/o opinion, 61 F .3d 896 (3d Cir. 1995); Kaytes v. Scottsdale Ins. Co., No. 97–3225, 1997 WL 763022 (E.D. Pa. Dec. 9,

I.

The Declaratory Judgment Act, 28 U.S.C. SS 2201 and 2202, provides a remedy that may be used by the federal courts in appropriate circumstances. This statute provides that a court "may declare the rights. . . of any interested party," 28 U.S.C. S 2201(a) (emphasis added), and contemplates that district courts will exercise discretion in determining whether to entertain such actions.

The unique characteristics of the Act werefirst made clear by the Supreme Court in Brillhart v. Excess Insurance Co. of America, 316 U.S. 491, 495 (1942), a case involving a dispute between insurance carriers. The Court emphasized that the jurisdiction conferred by the Act was discretionary, and district courts were under no compulsion to exercise it. Id. at 494.

> "Ordinarily it would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit where another suit is pending in a state court presenting the same issues, not gover ned by federal law, between the same parties. Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided."

Id. at 495.

After articulating the rationale, the Court listed specific factors for district judges to consider in deciding whether to hear declaratory judgment actions. A critical question, according to the Court, was "whether the questions in controversy between the parties to the federal suit, and which [were] not foreclosed under the applicable substantive law, can better be settled in the pr oceeding pending in the state court." Id. Naturally, this requires some inquiry into the scope of the state court pr oceeding,

_____

1997); Kaytes v. Imperial Cas. & Indem. Co., No. 93-1573, 1994 WL 78090 (E.D. Pa. Jan. 7, 1994). Contra Nationwide Mut. Ins. v. Fair, No. 96-1975 (W.D. Pa. Oct. 3, 1997) (holding that pollution exclusion was ambiguous and that insurer was obligated to defend and indemnify insured.).

the nature of defenses available there, and whether the claims of all parties in interest can satisfactorily be adjudicated in that proceeding. Id.; see also Edwin Borchard, Discretion to Refuse Jurisdiction of Actions for Declaratory Judgments, 26 Minn. L. Rev. 677 (1942) (observing that district courts are not obliged to exercise jurisdiction in declaratory judgment actions and concluding that refusal to exercise jurisdiction is proper where issues before state and federal courts are substantially the same and entertaining action would only duplicate judicial effort).

The discretionary nature of the declaratory judgment remedy became somewhat clouded after Colorado River Water Conservation District v. United States , 424 U.S. 800 (1976). There, the Court proclaimed that federal courts have a "virtually unflagging obligation" to exercise the jurisdiction conferred on them by Congr ess. Id. at 817.

Although Colorado River was an abstention case involving federal claims, some courts applied its restrictive teachings to limit or abolish the discretion to deny declaratory judgments. See, e.g., Terra Nova Ins. Co., Ltd. v. 900 Bar, Inc., 887 F.2d 1213, 1221 (3d Cir . 1989) (listing cases in which Colorado River test was applied in declaratory judgment context). Notably, in Terra Nova , this Court disagreed with that approach. Id. at 1222. After exploring the ramifications of Colorado River and Moses H. Cone Memorial Hospital v. Mercury Construction Corp., 460 U.S. 1 (1983) (holding that a district court may not grant a stay pending arbitration absent exceptional circumstances), we concluded that neither case diminished the jurisdictional discretion contained in the Declaratory Judgment Act, and that Brillhart retained its vitality. Terra Nova, 887 F.2d at 1223.

Because of lingering confusion among the courts over whether Colorado River eroded Brillhart, the Supreme Court revisited the issue in Wilton v. Seven Falls Co., 515 U.S. 277, 279, 281 (1995). Reviewing the declaratory judgment remedy at some length, the Court reaffir med Brillhart's standard of broad discretion and r ejected Colorado River's restrictive "exceptional circumstances" test as inappropriate for the Declaratory Judgment Act. Id. at 286. As Wilton phrased it, "[i]n the declaratory judgment context, the

6

normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." Id. at 288. The statute "confers a discretion on the courts rather than an absolute right upon the litigant." Id. at 287.

Wilton's emphasis upon "practicality" and "wise judicial administration" echoes Brillhart's specific admonition: "It is not our function to find our way through a maze of local statutes and decisions on so technical and specialized a subject [matter] . . . . For one thing, it is too easy to lose our way." Brillhart, 316 U.S. at 497. The Court concluded that district court decisions should be reviewed under an abuse of discretion standard in actions for "declaratory relief where parallel proceedings, pr esenting opportunity for ventilation of the same state law issues, wer e underway in the state court." Id. at 290.3

Two years after Terra Nova, in United States v. Commonwealth of Pennsylvania, Department of Environmental Resources, 923 F .2d 1071, 1075 (3d Cir. 1991), we applied a limiting factor from Brillhart to draw a distinction between declaratory judgment actions that district courts should entertain, and those in which jurisdiction ought to be declined. We concluded that the District Court did not have open-ended discr etion to decline jurisdiction over a declaratory judgment action when the issues included federal statutory interpretation, the government's choice of a federal forum, an issue of sovereign immunity, or inadequacy of the state proceeding. Id. at 1076-79. That case was quite differ ent from Brillhart, where the declaratory judgment action was r estricted to issues of state law.

For cases like Brillhart, where district courts must decide whether to hear declaratory judgment actions involving insurance coverage issues, we have suggested r elevant considerations:

>    1. A general policy of restraint when the same issues are pending in a state court;

_____

3. We have applied Wilton's standard of discretion to interpleader actions as well. See NY Life Distributors, Inc. v. Adher ence Group, Inc., 72 F.3d 371 (3d Cir. 1995).

2. An inherent conflict of interest between an insurer's duty to defend in a state court and its attempt to characterize that suit in federal court as falling within the scope of a policy exclusion;

3. Avoidance of duplicative litigation.

Department of Environmental Resour ces, 923 F.2d at 1075–76 (discussing Terra Nova).4

These precedents counsel hesitation by federal courts in exercising jurisdiction over declaratory judgment actions when the state law involved is close or unsettled. See Mitcheson v. Harris, 955 F.2d 235, 240 (4th Cir. 1992) (noting that where there seemed to be equally relevant statements by the state courts on either side of the issue, it would be prudent to leave the question to be decided in the state proceeding).5 A federal court should also decline to exercise its discretionary jurisdiction when doing so would promote judicial economy by avoiding duplicative and piecemeal litigation. See id. at 239 (noting that "the prospects for coordinated management and alleviation of abrasion are greater when the litigation is handled under one jurisdictional roof."). Moreover , district courts should give serious consideration to the fact that they do not establish state law, but are limited to pr edicting it. This is especially important in insurance coverage cases, although we do not mean to confine its relevance to that category.

In diversity matters, the federal courts are often called upon to apply state law without the guidance of state appellate rulings. To aid in the correct disposition of such

_____

4. In Kiewit Eastern Co., Inc. v. L & R Construc. Co., Inc., 44 F.3d 1194, 1198 n.3 (3d Cir. 1995) the Court noted the discretionary factor in declaratory judgment actions, but proceeded on the merits because none of the parties contested that issue. Similarly in Nationwide Mutual Fire Insurance Co. v. Pipher, 140 F.3d 222 (3d Cir. 1998) and Nationwide Mutual Insurance Co. v. Buffetta, No. 99–1832, 2000 WL 1573085 (3d Cir. 2000), apparently the parties neither cited Wilton nor contested jurisdiction.

5. In Nationwide Mutual Fire Insurance Co. v. Cassel, 881 F. Supp. 133, 136 (M.D. Pa. 1994), the court declined to exer cise jurisdiction where the
claim presented "a novel, and hence, unsettled issue of state law which the state courts should address."

8

cases, some courts have adopted the practice of certifying questions of law to the state's highest court. This practice has been encouraged and utilized by the United States Supreme Court. This Court has also used this pr ocedure and found it to be a great benefit. W e recognize the necessity of restraint, however, so that we do not overburden the already crowded dockets of the state appellate courts with too many certifications.

"[I]n declaratory judgment actions Congr ess has afforded the federal courts a freedom not present in ordinary diversity suits to consider the state interest in having the state courts determine questions of state law." Mitcheson, 955 F.3d at 238. Consequently, it is counterproductive for a district court to entertain jurisdiction over a declaratory judgment action that implicates unsettled questions of state law, questions which might otherwise be candidates for certification to the state's highest court. Such matters should proceed in normal fashion thr ough the state court system. See id. at 240 (4th Cir. 1992) ("The [state] interests assume greater saliency where, as her e, the issues of state law are close."); see also Meritcar e, Inc. v. St. Paul Mercury Ins. Co., 166 F.3d 214, 225 n.7 (3d Cir . 1999). In short, where the applicable state law is uncertain or undetermined, district courts should be particularly reluctant to entertain declaratory judgment actions.

II.

Clearly, the case at hand falls outside the ar ea outlined by Brillhart and Wilton as appr opriate for the District Court to exercise its jurisdiction. At the time the court denied E & J's motion to dismiss, Dixon's personal injury suit and E & J's petition for declaratory judgment were both pending in state court before the same judge, who was presumably already familiar with the insurance policy and with the scientific evidence available on lead paint poisoning. Judicial efficiency was not promoted when the District Court also considered this evidence, as it inevitably had to when deciding the federal declaratory judgment action.6 If

---

6. In McDowell Oil Service, Inc. v. Interstate Fire and Casualty Co., 817 F.
Supp. 538, 546 (M.D. Pa. 1993), a district judge noted that it would be inefficient for a federal court to decide a declaratory judgment action that
would turn on the assessment of scientific data when the state court judge in the underlying tort action was already familiar with this data.

the District Court had not interfered, the state court would have been able to develop a coordinated schedule of briefing and discovery that would have promoted the efficient resolution of both the declaratory judgment action and the underlying tort action, thereby conserving judicial resources as well as those of the parties.

Not only were there strong factors militating against the exercise of jurisdiction over this declaratory judgment action, but no federal interests were pr omoted by deciding this case in the District Court. Not a single federal question was presented to the District Court by State Auto. As noted earlier, two trial court decisions, but no appellate cases, were in existence in the state system, a forum that was fully able and prepared to resolve this purely state law issue. Entertainment of a federal declaratory judgment suit in these circumstances fits Brillhart's description of a "vexatious" and "gratuitous interfer ence" with state court litigation.

It is irrelevant that the state declaratory judgment petition was filed after its counterpart in the District Court. Moreover, E & J's vigorous objection to the District Court's assumption of jurisdiction should have weighed in favor of refusing to entertain the action. Even in the absence of such a challenge, however, the circumstances presented here would readily have supported a decision to decline jurisdiction sua sponte.

In order to maintain the proper relationship between federal and state courts, it is important that district courts "step back" and allow the state courts the opportunity to resolve unsettled state law matters. As W ilton reminded us, the Declaratory Judgment Act confers a discr etion on the courts rather than an absolute right on litigants. Wilton, 515 U.S. at 287. It follows that the state's inter est in resolving its own law must not be given short shrift simply because one party or, indeed, both parties, perceive some advantage in the federal forum. When the state law is firmly established, there would seem to be even less r eason for the parties to resort to the federal courts. Unusual circumstances may occasionally justify such action, but declaratory judgments in such cases should be rar e.

10

We appreciate the efforts of the able and conscientious district judge in this case to expedite the disposition of litigation assigned to him, but as we have mentioned, other overriding considerations come into play. Decisions in declaratory judgment actions must yield to "considerations of practicality and wise judicial administration." Wilton, 515 U.S. at 288. The desire of insurance companies and their insureds to receive declarations in federal court on matters of purely state law has no special call on the federal forum.

Whether declaratory relief should be granted"will depend upon a circumspect sense of its fitness infor med by the teachings and experience concerning the functions and extent of federal judicial power." Id . at 287. We conclude that the assumption of jurisdiction under the Declaratory Judgment Act in this case was not consistent with a sound exercise of discretion.

Accordingly, we will vacate the judgment of the District Court and remand with directions to dismiss the complaint.

A True Copy:
Teste:

        Clerk of the United States Court of Appeals
        for the Third Circuit

11