CECILIA M. ALTONAGA, UNITED STATES DISTRICT JUDGE
Defendants, Ruben Rangel and Veronica Rangel, individually and as parents and natural guardians of Defendants E.R., P.R., Marisol Rangel and Cristo Angel Rangel (together the "Rangels") filed a Renewed Motion to Dismiss Plaintiff's Complaint for Declaratory Relief to be Joined in by Defendants Caribe and Northstar [ECF No. 26], on January 29, 2018. Defendants Northstar Builders, Inc.
*1331 ("Northstar") and Caribe at Cutlers Edge, LLC ("Caribe") have joined in part in the Renewed Motion. (See Joinder [ECF No. 27] ). Plaintiff, Mid-Continent Casualty Company ("Mid-Continent") filed a Response in Opposition [ECF No. 32], to which the Rangels filed a Reply [ECF No. 33]. The Court has carefully reviewed the Complaint for Declaratory Relief [ECF No. 1] and its attached exhibits, the parties' memoranda and attached exhibits, and applicable law. For the reasons that follow, the Motion is granted in part and this action dismissed.
I. BACKGROUND
Mid-Continent filed this action on December 5, 2017, seeking a declaration as to the scope of its obligations to defend and/or indemnify Northstar and/or Caribe against a state lawsuit filed by the Rangels. (See Compl. ¶ 1). The state court suit[1] arises from Ruben Rangel's fall from a roof while working at a residential construction site, resulting in catastrophic injuries. (See id. ¶ 15). In his state court complaint, Mr. Rangel alleges Northstar applied for the permit authorizing the construction (see id. ¶ 17.b.), Caribe was the owner (see id. ¶ 17.d.), and Capri was a shell contractor under contract with Caribe and Mr. Rangel's employer (see id. ¶¶ 18. a.-c.).
Northstar entered into an agreement with Caribe whereby Northstar agreed to qualify the Project and obtain a certificate of occupancy in exchange for Caribe's agreement to defend, indemnify, and hold Northstar harmless from damages or suits arising from the work. (See id. ¶ 19). Caribe entered into an agreement with Capri for Capri to act as the shell contractor (see id. ¶ 21); and Capri entered into an agreement with Zelaya Construction ("Zelaya") and/or Southeast Personnel Leasing ("Southeast") and/or DEAA Enterprises, Inc. ("DEAA"), as its subcontractor to perform the work under Capri's contract with Caribe (see id. ¶ 23). Mr. Rangel was an employee of Zelaya and/or Southeast and/or DEAA, and was hired to perform roofing work on the Project (see id. ¶ 24); Mid-Continent alleges at the time he was also either an employee or statutory employee of Caribe and/or Northstar (see id. ¶ 26).
Following the accident, Mr. Rangel petitioned for workers' compensation benefits as an employee of Northstar, Caribe, Capri, Caribe Group Corp., Zelaya, Southeast, and DEAA. (See id. ¶ 28, Ex. 5 [ECF No. 1-13] ). Mr. Rangel receives workers' compensation benefits from Caribe Group Corp.'s carrier, the Hartford; and/or Southeast's carrier, Lion Insurance Company; and/or DEAA's carrier, FCBI. (See id. ¶ 29; Ex. 6 [ECF No. 1-14] ). The state court action was filed on August 12, 2015 after the workers' compensation settlements; and on October 5, 2015, the Rangels filed their First Amended Complaint ("State Amended Complaint") [ECF No. 1-9] in the state court action. (See Compl. ¶ 30). Mid-Continent has been defending Northstar and Caribe in the state court action under a full reservation of rights. (See id. ¶ 32).
Mid-Continent issued a Commercial General Liability Insurance Policy to Caribe, and Northstar and Caribe are identified as named insureds under that Policy's Supplementary Declarations for Named Insured endorsement. (See id. ¶¶ 35-36). Mid-Continent also issued an Excess Insurance Policy to Caribe, and Northstar and Caribe qualify as insureds under the Excess Policy. (See id. ¶¶ 39-40).
*1332 Mid-Continent states three claims seeking a declaration it is not obligated to defend or indemnify Northstar or Caribe. (See generally id. ). Count I is titled "No Coverage Under the MCC GL Policy and the MCC Excess Policy for Damages that Northstar and Caribe are not Legally Obligated to Pay." (Id. 17). In Count I, Mid-Continent describes the coverage afforded Northstar and Caribe under the GL Policy and the Excess Policy (see id. ¶ 44); states Mr. Rangel is receiving workers' compensation benefits as the employee or statutory employee of Northstar and Caribe from settlements by Hartford, Lion, and FCBI (see id. ¶ 45); and so coverage under the GL and Excess Policies is not afforded insofar as the Rangels seek damages Northstar and Caribe are not legally obligated to pay as a result of the provision of workers' compensation benefits to Mr. Rangel (see id. ¶ 46).
Count II is titled "No Coverage for Northstar and Caribe Under the Worker's Compensation and Employer's Liability Exclusions of the MCC GL Policy and the MCC Excess Policy." (Id. 18). Mid-Continent references the Policies' workers' compensation and employer's liability exclusions (see id. ¶ 49); states Northstar and/or Caribe were Mr. Rangel's employer or statutory employer (see id. ¶ 51); Mr. Rangel's application for and receipt of workers' compensation benefits constitutes an election of remedies and estops him from disclaiming he was not their employee (see id. ¶ 52); and based on the allegations in the state court complaint and its exhibits, the workers' compensation and/or employer's liability exclusions apply to preclude Mid-Continent from any obligation to defend and/or indemnify Northstar and/or Caribe for the Rangels's claims (see id. ¶ 53).
Count III is titled "No Duty to Indemnify Northstar and Caribe for Negligence Under the MCC GL Policy and MCC Excess Policy." (Id. 20). In it, Mid-Continent alleges to avoid the exclusive remedy of Florida's workers' compensation law and hold Northstar and Caribe liable, Mr. Rangel had to allege his injury was virtually likely to occur. (See id. ¶ 56). Consequently, Mid-Continent has no duty to indemnify Northstar and Caribe because the acts giving rise to the incident are not an occurrence and are excluded from coverage by the expected and intended exclusions under the Policies. (See id. ¶ 57).
The essence of the Renewed Motion to Dismiss is aptly captured by the following explanation provided by Defendants:
This action for declaratory relief is simply an improper attempt at procedural fencing in an effort to circumvent unfavorable judicial rulings already made in the previously filed state court action, which has been pending against the insureds of Mid-Continent Casualty Company ... since August 12, 2015. Although the state case is presently set for trial in June and has been pending for nearly 2 ½ years, during which time MCCC has been providing a defense to its insureds, it was only after the state court entered a summary judgment on December 4, 2017 finding that its insureds were neither the injured worker's actual or statutory employer, nor entitled to raise the claim of election of remedies as a matter of law that MCCC filed this suit based upon the exact identical claims ruled upon and rejected by the state court.
(Mot. 1-2 (ellipses added; underlining and footnote call number omitted) ).
Defendants move to dismiss the Complaint, arguing it fails to state a cause of action under Federal Rule of Civil Procedure 12(b)(6). (See id. 2-15; Reply 1-8). Alternatively, Defendants assert by applying the analysis the Eleventh Circuit set out in *1333 Ameritas Variable Life Insurance Company v. Roach , 411 F.3d 1328 (11th Cir. 2005), the Court should exercise its discretion and abstain from hearing this case. (See Mot. 2, 15-20; Reply 8-10). Plaintiff opposes both arguments and also explains why the Court should find it has jurisdiction over the case; the latter a point not even raised by Defendants in their briefing. (See generally Resp.).
Because the Court resolves the Motion by application of Ameritas Variable Life Insurance Company and not consideration of the Rule 12(b)(6) arguments the parties present, the Court adds additional facts in this background section necessary to the abstention analysis that follows. The State Amended Complaint, contrary to Mid-Continent's allegations, alleges "Northstar and [Caribe] were not statutory or actual employers of Plaintiff, ... and did not provide workers compensation insurance benefits to Plaintiff .... As a result neither Defendant ... may assert workers compensation immunity as a defense." (State Am. Compl. ¶ 11 (alterations added) ).
Elaborating on the state court's order, on December 4, 2017, with regard to the issue of whether Northstar and Caribe were Mr. Rangel's employer, the day before this federal action was filed, the state court entered a written order granting the Rangels's motion for summary judgment on Northstar and Caribe's defense of workers' compensation immunity. Specifically, the state court determined:
1. ... [N]either the Defendant Northstar nor the Defendant Caribe Edge were [sic] either Ruben Rangel's actual employer or statutory employers under the provisions of Florida's Workers Compensation statutes, which is a requisite for workers compensation immunity.
2 ... Northstar did not sublet part of its contract work to a subcontractor in the context of Florida Statute [§] 440.10, because Northstar did not have a contractual relationship with the Defendant Capri or any other subcontractor and therefore it could not be in any type of vertical subcontractor relationship with it, making workers compensation immunity inapplicable to it ....
3 ... Caribe Edge was the owner of the subject project and did not subcontract any contractual duty that it owed to any contractor, so that it was not the Plaintiff's statutory employer ....
4. The ... doctrine of estoppel based upon the Plaintiff's filing of a workers compensation claim against the Defendants Caribe Edge and Northstar does not apply as a matter of law to prevent the Plaintiffs from establishing that the Defendants Northstar and Caribe Edge were neither his actual employers nor statutory employers, since ... the workers compensation claims filed against these named Defendants were not successfully maintained.
5 ... Plaintiff's settlements of both his potential workers compensation and civil tort claims with Southeast Personnel Leasing, DEAA and Caribe Group do not constitute an election of remedies as to the Defendants Caribe Edge and Northstar as a matter of law, since the lump sum settlements only released the settling parties who continued to deny that the Plaintiff was entitled to workers compensation benefits, while reserving the Plaintiff's rights to pursue civil tort remedies against non-settling parties and did not constitute the pursuit of the Plaintiff's workers compensation claims to a final resolution on the merits.
(State Court Order [ECF No. 26-1] 1-3 (alterations added) ). As noted by Defendants, the motion for summary judgment before the state court, and the ensuing order, addressed and resolved the exact issues Mid-Continent bases this action and reservation of rights on-the inapplicability of workers' compensation immunity to *1334 its insureds, Defendants Northstar and Caribe. (See Mot. 15).
II. ANALYSIS
It is wholly within the Court's discretion whether to entertain a case under the Declaratory Judgment Act, 28 U.S.C. section 2201, even if the action properly falls within the Court's jurisdiction. See Otwell v. Ala. Power Co. , 747 F.3d 1275, 1280 (11th Cir. 2014) (noting "[i]t is well established that district courts have exceptionally broad discretion in deciding whether to issue a declaratory judgment, and the remedy is not obligatory" (alteration added; citation omitted) ). The Act gives the federal courts competence to make a declaration of rights, but it does not impose a duty to do so. See Brillhart v. Excess Ins. Co. of Am. , 316 U.S. 491, 494, 62 S.Ct. 1173, 86 L.Ed. 1620 (1942).
As explained in Wilton v. Seven Falls Company , "[b]y the Declaratory Judgment Act, Congress sought to place a remedial arrow in the district court's quiver; it created an opportunity, rather than a duty, to grant a new form of relief to qualifying litigants." 515 U.S. 277, 288, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995) (alteration added). Consequently, "a district court is authorized, in the sound exercise of its discretion, to stay or to dismiss an action seeking a declaratory judgment before trial or after all arguments have drawn to a close." Id. (footnote call number omitted). "[S]pecial flexibility is called for in the declaratory judgment context, where the normal principle that federal courts should adjudicate claims within their jurisdiction yields to considerations of practicality and wise judicial administration." United Purchasing Ass'n, LLC v. Am. Valve, Inc. , No. 6:08-cv-515-Orl-31GJK, 2008 WL 2557559, at *1 (M.D. Fla. June 20, 2008) (alteration added; internal quotation marks and citations omitted).
In Ameritas Variable Life Insurance Company , the Eleventh Circuit reiterated the Declaratory Judgment Act "only gives the federal courts competence to make a declaration of rights; it does not impose a duty to do so." 411 F.3d at 1330. In the context of insurance coverage disputes, as this one, "[t]he desire of insurance companies ... to receive declarations in federal courts on matters of purely state law has no special call on the federal forum." State Auto Ins. Cos. v. Summy , 234 F.3d 131, 136 (3d Cir. 2000) (alterations added). Consistent with the foregoing precepts, the Eleventh Circuit has affirmed a district court's discretion to "decline to entertain a declaratory judgment action on the merits when a pending proceeding in another court will fully resolve the controversy between the parties." Ven-Fuel, Inc. v. Dep't of the Treasury , 673 F.2d 1194, 1195 (11th Cir. 1982) (citations omitted). A district court can abuse its discretion if it: "(1) fails to consider a relevant factor that should have been given significant weight, (2) considers and gives significant weight to an irrelevant or improper factor, or (3) considers all proper factors, and no improper [factors] ... but ..., in weighing those factors, commits a clear error of judgment." First Mercury Ins. Co. v. Excellent Computing Distribs., Inc. , 648 Fed.Appx. 861, 865 (11th Cir. 2016) (alterations in original; internal quotation marks and citation omitted).
The Eleventh Circuit in Ameritas provided a list of non-exhaustive factors for district courts to use in evaluating whether to dismiss a federal declaratory judgment action where an underlying state court action "involves some of the same issues and parties." First Mercury Ins. Co. , 648 Fed.Appx. at 866. The factors are "neither absolute nor is any one factor controlling;" they "are merely guideposts in furtherance of the Supreme Court's admonitions *1335 in Brillhart and Wilton ." Ameritas , 411 F.3d at 1331. The factors, not all of which may be relevant in any given case, see First Mercury Ins. Co. , 648 Fed.Appx. at 866, are:
(1) the strength of the state's interest in having the issues raised in the federal declaratory action decided in the state courts;
(2) whether the judgment in the federal declaratory action would settle the controversy;
(3) whether the federal declaratory action would serve a useful purpose in clarifying the legal relations at issue;
(4) whether the declaratory remedy is being used merely for the purpose of "procedural fencing"-that is, to provide an arena for a race for res judicata or to achieve a federal hearing in a case not otherwise removable;
(5) whether the use of a declaratory action would increase the friction between our federal and state courts and improperly encroach on state jurisdiction;
(6) whether there is an alternative remedy that is better or more effective;
(7) whether the underlying factual issues are important to an informed resolution of the case;
(8) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
(9) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common or statutory law dictates a resolution of the declaratory judgment action.
Ameritas , 411 F.3d at 1331.
Mid-Continent argues the Court need not address the Ameritas factors at all because this action does not have a parallel proceeding. (See Resp. 14-15). Mid-Continent does not elaborate on this point, other than to provide a string of citations to cases with parenthetical quotations taken from those cases. (See id. ).
The Eleventh Circuit has rejected the suggestion the Ameritas factors apply only when reviewing parallel actions, stating nothing in the Act "suggests that a district court's discretionary authority exists only when a pending state proceeding shares substantially the same parties and issues." First Mercury Ins. Co. , 648 Fed.Appx. at 866. See also Penn Millers Ins. Co. v. AG-Mart Produce, Inc. , No. 8:05-CV-1852-T-17TBM, 2006 WL 2864402, at *2 (M.D. Fla. Oct. 5, 2006) ; Houston Specialty Ins. Co. v. La Gazzetta, LLC , No. 15-21756-Civ, 2015 WL 9258096, at *2 (S.D. Fla. Dec. 18, 2015) (finding "the parties and issues pending in the state and federal actions are 'sufficiently similar,' such that they are parallel and the Ameritas factors apply" and "the issues involved in both actions substantially overlap one another" (citation omitted) ); Rhein v. Kevelson , No. 14-61830-Civ, 2014 WL 6694744, at *4 (S.D. Fla. Nov. 26, 2014) ("there is no requirement in Ameritas that the state and federal actions involve the exact same parties.").
The state action and this case are sufficiently similar such that they are parallel. First, the parties. The only party in this action missing from the state action is Mid-Continent, which has been providing a defense to Northstar and Caribe in the state case since August 12, 2015. The only party missing from this action that is named in the state case is Capri, for which none of the issues raised in this case require its participation, as shown by Mid-Continent's decision not to include it as a defendant here.
Next, the issues. While Mid-Continent states three claims for declaratory relief, in each it seeks a declaration it has no duty to indemnify Northstar and Caribe under the GL and Excess Policies. These *1336 constitute premature requests for declaratory relief, joined to the ripe requests regarding Mid-Continent's duty to defend. The undersigned has previously stayed accompanying, unripe requests for a declaration as to the duty to indemnify that are joined to ripe requests for a declaration as to the duty to defend. See, e.g. , Hartford Fire Ins. Co. v. Weathertrol Maint. Corp. , No. 16-24509-Civ, 2017 WL 5643298, at *4-5 (S.D. Fla. Feb. 21, 2017). It does so again here.
Consequently, the narrow question presented is whether the issues regarding Mid-Continent's duty to defend Northstar and Caribe are sufficiently similar to issues pending in the state action. And they are-or rather were-as clearly evidenced by the state court's summary judgment order, entered but a day before Mid-Continent filed this suit, finding Northstar and Caribe were not Mr. Rangel's employer. That order appears to answer the "questions" and uncertainty Mid-Continent alleges in its Complaint as the basis for seeking a federal court's declaration as to its duty to provide a defense in the state court suit.
Given the two cases are parallel for purposes of considering whether to abstain from jurisdiction over the duty to defend question, the Court now turns to the Ameritas factors. With regard to the first, fifth, and ninth factors, the question of whether a duty to defend exists under the Policies and the construction to give Florida's Workers Compensation Act, implicated in the declaratory relief requested in the Complaint, are questions of state, not federal law. See Trailer Bridge, Inc. v. Ill. Nat. Ins. Co. , 657 F.3d 1135, 1141 (11th Cir. 2011) ("Because the insurance contract was issued in Florida and the questions before the Court are ones of contract construction, it is undisputed that Florida law governs the meaning of the Policy and its application to the facts of this case."). Given Florida law, not federal, governs the substantive issues raised, Florida has a strong interest in this case and federal jurisdiction over this action would only encroach the province of the state court. Moreover, Mid-Continent's insureds' status has already been determined by the state court: neither Northstar nor Caribe was Mr. Rangel's employer. The observations of the court in Geico General Insurance Company v. Pruitt in finding the first, fifth and ninth Ameritas factors favored abstention apply equally here:
The resolution of this matter will have potentially significant implications regarding insurance coverage under Florida law .... [T]here is no substantive federal nexus to this cause of action. This case presents only state law issues, and its public policy implications affect only Florida insurance contracts. Given Florida's strong interest in this case and its marginal significance elsewhere, a resolution by a state trial court with review by a state appellate court is clearly preferable.
No. 08-21623-Civ, 2009 WL 10666845, at *3 (S.D. Fla. Feb. 19, 2009) (alterations added).
With regard to the second, fourth, fifth, and eighth factors, after more than two years of litigation, the state court has already answered the question of Mid-Continent's insureds' status vis-à-vis Mr. Rangel. It has ruled they were not his actual or statutory employers. A judgment here is unnecessary to settle any remaining "controversy" or "uncertainty" Mid-Continent may perceive as to its duty to continue providing its insureds a defense in the state court suit (second factor).
This declaratory judgment action also appears particularly to fit within the definition of "procedural fencing," with Mid-Continent seemingly seeking "an arena for a race for res judicata " (fourth factor). To *1337 allow it to proceed would only increase friction between the state and federal courts (fifth factor), for what Mid-Continent seeks is the Court's disapproval of the state court order. Ameritas , 411 F.3d at 1331 (internal quotation marks omitted). As noted by Defendants, "rather than serving any 'useful purpose,' [Mid-Continent]'s sole purpose in filing this action is to attempt to circumvent the state court's prior ruling, which not only constitutes improper fencing, but would produce the very frictions between the functioning of the state and federal courts" "the Eleventh Circuit warned must be avoided." (Mot. 19 (alteration added; citations omitted) ). See also GEICO Gen. Ins. Co. v. Lacayo , No. 1:15-cv-20582, 2015 WL 4464020, at *3 (S.D. Fla. July 21, 2015) (emphasizing "the fact that the underlying litigation was in state court for three years and it is clear the state court is best positioned to address the underlying factual issues" raised by the federal declaratory action); Rhein , 2014 WL 6694744, at *4 (given state court had reserved jurisdiction over same issue raised in the declaratory judgment action, "this action is necessarily a collateral attack on the state court's order and can serve no purpose other than 'procedural fencing.' "). Whether Mid-Continent should continue providing a defense to its insureds given the Policies' workers' compensation exclusions highlighted in the federal Complaint has been implicitly decided by the state court's summary judgment order following years of discovery and evidencing that court's better position to evaluate and apply Florida law to the factual issues regarding the parties' employment relationship, if any (eighth factor).
Certainly "[s]erving as a 'Monday-morning quarterback' is not the role Congress intended for the federal courts in the Declaratory Judgment Act." Guarantee Ins. Co. v. Old Republic Gen. Ins. Corp. , No. 12-20189-Civ, 2012 WL 4468352, at *4 (S.D. Fla. Sept. 26, 2012). Consideration of the Ameritas factors strongly favors abstention.
For the foregoing reasons, it is ORDERED AND ADJUDGED that the Renewed Motion to Dismiss Plaintiff's Complaint for Declaratory Relief to be Joined in by Defendants Caribe and Northstar [ECF No. 26] is GRANTED in part. Mid-Continent's Complaint is dismissed without prejudice, and the Clerk instructed to CLOSE the case.
DONE AND ORDERED in Miami, Florida this 26th day of February, 2018.

Ruben Rangel, et al. v. Northstar Homebuilders, Inc.; Caribe at Cutlers Edge, LLC; and Capri Constr. Corp. , Miami-Dade Case Number 15-0718720 CA 32.